Chancery Division Civil Cover Sheet - General Chancery Section          (Rev. 6/15/09) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

HOUSE OF BRIDES, INC., an Illinois corporation,

                                          Plaintiff

                    v.                                                    } No. 12CH38284

DESSY MARKETING & DISTRIBUTION, INC.,

                                          Defendant

## CHANCERY DIVISION CIVIL COVER SHEET
### GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the line in front of the appropriate category which best characterizes your action being filed.

| | | | | |
|---|---|---|---|---|
| 0005 _____ | Administrative Review | | | |
| 0001 _____ | Class Action | | | |
| 0002 ✓ | Declaratory Judgment | | | |
| 0004 _____ | Injunction | | | |
| | | | | |
| 0007 _____ | General Chancery | | | |
| 0010 _____ | Accounting | 0019 _____ | Partition | |
| 0011 _____ | Arbitration | 0020 _____ | Quiet Title | |
| 0012 _____ | Certiorari | 0021 _____ | Quo Warranto | |
| 0013 _____ | Dissolution of Corporation | 0022 _____ | Redemption Rights | |
| 0014 _____ | Dissolution of Partnership | 0023 _____ | Reformation of a Contract | |
| 0015 _____ | Equitable Lien | 0024 _____ | Rescission of a Contract | |
| 0016 _____ | Interpleader | 0025 _____ | Specific Performance | |
| 0017 _____ | Mandamus | 0026 _____ | Trust Construction | |
| 0018 _____ | Ne Exeat | _____ | Other (specify) _____ | |

By: _____

        Attorney                    Pro Se

Atty. No.: 46239

Name: James K. Borcia of Tressler LLP

Atty. for: Plaintiff

Address: 233 S. Wacker Drive, 22nd Floor

City/State/Zip: Chicago, IL 60606

Telephone: (312) 627-4000

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

1910 - No Fee Paid
1919 - Fee Paid
Jury Demand                                    CCG N067-10M-6/09/04 (                              )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

HOUSE OF BRIDES, INC., an Illinois corporation,

}                    12CH38284

v.

DESSY MARKETING & DISTRIBUTION, INC.,

No. _____

## JURY DEMAND

**The undersigned demands a jury trial.**



_____
(Signature)

Dated: _____, _____

Atty. No.: 46239
Name: James K. Borcia of Tressler LLP
Atty. for: Plaintiff
Address: 233 S. Wacker Drive, 22nd Floor
City/State/Zip: Chicago, IL 60606
Telephone: (312) 627-4000

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

JKB/cic/554812          Firm No. 46239          4704-6-51

## IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

HOUSE OF BRIDES, INC., an Illinois corporation,      )
                                                     )
          Plaintiff,                                 )
                                                     )
v.                                                   ) No.
                                                     ) 12 C 038284
DESSY MARKETING & DISTRIBUTION, INC.,                )
                                                     )
          Defendant.                                 )

## COMPLAINT

Plaintiff, House of Brides, Inc., by and through its attorneys, Tressler LLP, and for its

Complaint against Dessy Marketing & Distribution, Inc., states as follows:

## PARTIES

1.      Plaintiff House of Brides, Inc. ("HOB") is an Illinois corporation doing business

in Cook County, Illinois.

2.      Defendant Dessy Marketing & Distribution, Inc. ("Dessy") is a corporation doing

business in Cook County, Illinois.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over parties hereto as they are doing business in

Illinois.

4.      Venue is proper as some of the transactions at issue occurred in Cook County.

## GENERAL ALLEGATIONS

5.      HOB operates retail stores that sell wedding dresses including gowns for brides

and bridesmaids.  HOB takes orders from customers at both its retail store locations and on the

Internet.

6.     HOB carries a wide variety of dresses made by many manufacturers.

7.     Dessy is a manufacturer and distributor of wedding dresses, including gowns for brides and bridesmaids.

8.     HOB purchased and sold Dessy dresses and was an authorized distributor for Dessy. HOB has been doing business with Dessy for more than 20 years.

9.     Dessy recently purported to discontinue its relationship with HOB. (Ex. A, October 5, 2012 letter from Dessy's counsel).

10.     HOB issued purchase orders to Dessy for the dresses which had specific dates for when the dresses were to be received by HOB. However, on numerous occasions Dessy failed to meet the date specified by HOB. As a result, on many occasions HOB's customers refused the dress and HOB lost the sale to its customer. On numerous occasions, even if the customer took the dress the fact that it was shipped late by Dessy damaged HOB's relationship with its customer.

11.     On numerous occasions Dessy shipped duplicate dress to HOB. As a result, HOB was forced to pay for dresses that were not ordered by a customer.

12.     On numerous occasions Dessy shipped the wrong dress to HOB. As a result, HOB was forced to pay for dresses that were not ordered by a customer and HOB lost sales to its customers.

13.     On numerous occasions, Dessy failed to ship the dresses that had been ordered by HOB and confirmed by Dessy. As a result, HOB lost the sale to its customers and damaged HOB's relationship with its customer and others.

14.     On numerous occasions Dessy shipped defective dresses to HOB. As a result, HOB lost the sale to its customers.

15.     On a yearly basis, Dessy provided HOB with samples of Dessy's dresses to be used by HOB in its retail stores for its customers to try on and sell. As a result of Dessy's termination of its relationship with HOB, HOB has large numbers of samples of Dessy dresses for sale.

16.     Dessy's invoices indicate its payment terms as Net 30. However, Dessy's terms with HOB was 60 to 90 days, which for all the years of the relationship was understood as Dessy allowed HOB to pay invoices 60 to 90 days from the invoice date. Both parties considered invoices current unless paid after 90 days after the invoice date.

17.     HOB maintained the ordering process mandated by Dessy. HOB salons submitted customer orders to Dessy via fax. Dessy acknowledged receipt of the orders within 1 - 5 business days. Dessy emailed or faxed the salons a confirmation number and a confirmation date. The confirmation number confirmed the order was placed and identified the order. The confirmation date indicated the delivery of the order from Dessy to the HOB salon. The confirmation date is based on Dessy's production. Standard delivery is given in its policy as 10 - 12 weeks and rush delivery as 8 weeks. The orders were produced at Dessy's factories in China.

18.     Dessy shipped customer orders direct to HOB. HOB's salons then transferred the invoices to HOB's Accounting Department, at which time the bookkeeper entered the invoices into the system to pay. Dessy's Accounting Department contacted the bookkeeper with the monthly due payment. The bookkeeper, in turn, paid the amount agreed upon with Dessy's accounting department.

19.     HOB operated and paid within the parameters of Dessy's terms.

3

20.     Approximately three years ago, HOB noted a significant change in Dessy's delivery of customer orders. Most often, Dessy shipped orders near the confirmation date varying slightly before and after the date. However at the time, Dessy shipped customer orders 4 - 6 weeks after the confirmation date and very frequently 1 - 2 weeks prior to customer wedding dates.

21.     HOB received numerous complaints from its expeditors regarding excessively late deliveries. Expeditors check the status of order on or just before an order's confirmation date to confirm its shipment. During this period, expeditors reported nearly 100% of HOB's orders to Dessy were not completed or ready to ship on or before the confirmation date. More so, expeditors reported nearly 100% of these orders shipped substantially after the confirmation date, often as much as 4 - 6 weeks later. Customer orders arrived late and in many instances, as close to 1 - 2 weeks before the wedding date.

22.     Also, many of the orders belonged to customers outside the State of Illinois and required additional time to ship the order from HOB to their location. Dessy's late delivery coupled with shipment to the customer resulted in orders arriving 1 - 2 days prior to the wedding and at the expense of HOB for compensation.

23.     Due to Dessy's late delivery, HOB suffered financial losses. Customers refused to accept orders because of their lateness. Out of state customers refused deliveries and orders were returned to HOB's salons. HOB requested a return to Dessy on the late orders, but Dessy refused any returns. HOB salons were forced to store the refused and returned orders. HOB does not have space dedicated for the storage of these orders and instead had to use selling space in its salons. The loss of this space results in a loss in revenue.

24.     HOB issued refunds for the refused and returned orders to its customers.
Likewise, HOB issued partial refunds, free upgraded shipping and/or free alterations valued at
$95.00 per dress as compensation for customers who accepted their late orders.    HOB
requested reimbursement from Dessy but was again denied any kind of reimbursement.

25.     Dessy routinely delivered customer orders excessively late despite HOB paying
in accordance to their terms and to the detriment of HOB.

26.     The issue was addressed in a phone conversation between Dale Buziecki of
HOB and Alan Dessy, owner of Dessy approximately two years ago.    In the conversation, Mr.
Dessy stated that Dessy's bank significantly cut Dessy's business credit line in light of tighter
lending restrictions.  Mr. Dessy said that because of the lower credit, he was unwilling to ship
HOB orders on time because of the subsequent money HOB would owe.  The conversation
concluded with Mr. Buziecki confirming HOB would continue to pay on schedule if Dessy
would improve its order delivery.

27.     Despite the conversation, Dessy's delivery did not significantly improve but
both parties continued the relationship.

28.     HOB hired a new CPA in January 2012.  The CPA reviewed all expenditures
and noted that Dessy had overbilled HOB for freight.  HOB sent a letter on January 11, 2012 to
Dessy requesting that Dessy use HOB's UPS Freight Collect account to ensure fair and
accurate freight charges.    Also in the letter, HOB stated that if Dessy refused to use the
account, HOB's Shipping Departments would weigh all packages and check the charge with
UPS.  If the freight charge on the invoice differed with the UPS quote, HOB's Shipping
Department would adjust the charge accordingly.

29.     Dessy did not use HOB's account and continued to overbill HOB for freight. On some occasions, HOB adjusted the freight on Dessy's invoice to reflect the actual UPS charge.

30.     On May 3, 2012, Dessy emailed Mr. Buziecki trying to improve a change in payment terms due to HOB's discovering Dessy's overbilling for freight and demand that the overbilling cease.  The change in terms attempted to restrict HOB to a $100,000 credit limit. Dessy also demanded payment on the adjusted freight charges and refused to use the UPS Freight Collect account or honor future adjusted freight charges.

31.     HOB proceeded and paid according to the monthly due amounts provided by Dessy 's accounting department. HOB paid Dessy, $22,193.38 in May 2012; $35,475.61 in June 2012; $151,909.42 in July 2012; and $101,332.95 in August 2012.

32.     During the months of May 2012 through August 2012, Dessy continued to deliver customer orders later than the confirmation dates and again began shipping excessively later, up to four weeks after the confirmation date.

33.     Retail business slows in the fourth quarter of the year.  HOB is a cash flow business and because of the slower sales, did not have the take-in to meet the monthly due amount of $135,000 for September 2012.  Instead, HOB mailed an overnight check for $29,986.83 and a letter to Dessy on September 14, 2012 explaining the payment amount.  The letter stated HOB intended to send a large, weekly check towards the due amount for the month. The letter confirmed HOB would continue this payment method until cash flow increased.

34.     Dessy did not ship any customer orders upon receipt of the first check in September.

35.     HOB sent the month's second check on September 21, 2012 for $24,984.91. Dessy again did not ship any orders.

36.     At this time, Mr. Buziecki and Dessy corresponded in a series of emails. In an email dated September 24, 2012, Dessy stated he would decrease the credit line to $150,000 for payment by October 10, 2012, but demanded $83,000 in immediate payment or he would close the account.

37.     HOB sent the third check on September 27, 2012 for $50,027.85. Mr. Buziecki emailed Dessy on September 28, 2012 confirming the check and requesting the shipment of orders. HOB had already paid Dessy nearly $105,000 in September. Dessy replied that day stating HOB owed $232,182.03 total and if HOB did not pay down to $150,000 by October 10, 2012, he would close the account. Mr. Buziecki replied again stating he could not pay the exact amount due to cash flow but confirmed he would send an additional $50,000 by October 15, 2012. Mr. Buziecki also appealed to Dessy to release customer orders and at the very least, to release those with very close wedding dates. Dessy refused to release any orders with absolute disregard for HOB's customers.

38.     Mr. Buziecki emailed Dessy on October 1, 2012 requesting Dessy's confirmation that he would complete and deliver orders processed prior to his imposition of the new terms and orders with close wedding dates. These orders would reflect the same terms and credit line in place before Dessy's new terms given in his September 24, 2012 email. HOB requested his confirmation by 12:00 pm CST October 2, 2012. Mr. Buziecki included that if he did not receive Dessy's reply by that time and date, HOB would refund all pending customer orders.

39.     Mr. Buziecki did not receive a reply from Dessy by noon October 2, 2012 and therefore, determined that Dessy closed the account. HOB contacted all customers with pending Dessy orders. HOB offered customers a refund and/or reselection based on the wedding date.

40. HOB is now refunding nearly 1,000 Dessy orders resulting in a substantial loss in sales and damage to HOB's reputation. HOB's salons are also handling daily customer complaints, which also include online posts to various websites. HOB is a "word-of-mouth" company and especially affected by the reputation damage.

## COUNT I - BREACH OF CONTRACT

41. HOB realleges and incorporates herein by this reference Paragraphs 1 through 40 above as if fully set forth herein.

42. As a result of these actions, Dessy materially breached its contracts with HOB as well as the implied covenant of good faith and fair dealing.

43. As a direct and proximate result of the Dessy's material breaches, HOB has been directly damaged.

44. As a direct and proximate result of Dessy's contractual breaches, HOB has also suffered consequential and incidental damages.

45. HOB has complied with its contractual obligations with Dessy, except for those that have been excused by Dessy's material breaches as set forth herein.

## COUNT II - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

46. HOB realleges and incorporates herein by this reference Paragraphs 1 through 45 above as if fully set forth herein.

47. Dessy, as a merchant and seller of dresses, provided goods to HOB.

48. Many of the dresses supplied by Dessy were not merchantable, in that they:

    a. would not pass without objection in the trade under the contract description; and

    b. were not of fair or average quality.

49. As a result of Dessy's breaches of warranty, HOB has suffered damages.

## COUNT III - DEFAMATION

50.     HOB realleges and incorporates herein by this reference Paragraphs 1 through 49 above as if fully set forth herein.

51.     HOB has also learned that Dessy's Customer Service Department is telling customers that Dessy closed HOB's account because HOB did not pay bills. Such statements are false and do not accurately represent the issues involved with HOB Account. Also, these statements are slanderous and cause further damage to HOB's reputation.

52.     The information that Dessy communicated to third parties was false, and Dessy knew or should have known that said information was false.

53.     The statements by Dessy were regarding HOB's business, and therefore constitute defamation *per se*. HOB has no adequate remedy at law in that money damages alone will not compensate it for Dessy's wrongful conduct and it will suffer irreparable harm if Dessy is not enjoined.

54.     As a result of Dessy's acts, HOB was and continues to be damaged.

## COUNT IV – COMMERCIAL DISPARAGEMENT

55.     HOB realleges and incorporates herein by this reference Paragraphs 1 through 54 above as if fully set forth herein.

56.     The above identified statements, in addition to impugning HOB's integrity, simultaneously demise and disparage the quality of the goods and services offered by HOB.

57.     Dessy's disparaging false statements of fact have actually and proximately caused injury to HOB by diminishing the reputation of quality of HOB's goods and services and discouraged third parties from purchasing them.

58.     HOB has sustained substantial damages as a result of Dessy's publication of the foregoing disparaging statements, including but not limited to a substantial decrease in business since the statements were made.

59.     The foregoing disparaging statements were made by Dessy with the knowledge of their falsity and with actual malice so to justify an award of punitive damages.

## COUNT V - FRAUD

60.     HOB realleges and incorporates herein by this reference Paragraphs 1 through 59 above as if fully set forth herein.

61.     With respect to the shipping charges, Dessy represented to HOB that it was merely passing along the shipping charges to Dessy by UPS.

62.     Contrary to Dessy's representations, HOB discovered that Dessy was charging HOB more than what was being charged by UPS, and then keeping the difference.

63.     HOB relied upon Dessy's representations in this regard to its detriment.

64.     As a direct and proximate result of Dessy's fraudulent representations, HOB has been injured.

## COUNT VI – CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES

65.     HOB realleges and incorporates herein by this reference Paragraphs 1 through 64 above as if fully set forth herein.

66.     With respect to the shipping charges, Dessy represented to HOB that it was merely passing along the shipping charges to Dessy by UPS.

67.     Contrary to Dessy's representations, HOB discovered that Dessy was charging HOB more than what was being charged by UPS, and then keeping the difference.

68.     HOB relied upon Dessy's representations in this regard to its detriment.

69.     At all relevant times, there was in full force and effect in the State of Illinois a statute commonly known as the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2, which provides in pertinent part as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

70.     The Consumer Fraud and Deceptive Business Practices Act further provides [815 ILCS 505/10(a)]:

> Any person who suffers actual damages as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper;...

71.     As a direct and proximate result of Dessy's fraudulent representations, HOB has been injured by Dessy's deceptive and unfair conduct.

## COUNT VII – DECLARATORY JUDGMENT

72.     HOB realleges and incorporates herein by this reference Paragraphs 1 through 71 above as if fully set forth herein.

73.     As set forth in Exhibit A, Dessy has made claims against HOB for promoting and selling Dessy's products after Dessy's purported termination.

74.     Dessy has asserted that HOB's continuing to promote and sell Dessy's products violates Dessy's intellectual property rights, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

75.     HOB disagrees with Dessy's claims.  HOB still has in stock hundreds of Dessy dresses that it received from Dessy.  Under the first sale doctrine, HOB is allowed to continue to promote and sell the Dessy dresses.

76.     An actual controversy exists between HOB and Dessy.

77.     A declaration of rights is necessary and appropriate from this Court.

WHEREFORE, Plaintiff, House Of Brides, Inc., prays that this Honorable Court enter judgment in its favor and against Defendant Dessy Marketing & Distribution, Inc. for damages in excess of $50,000, plus a declaration that it has not violated HOB's intellectual property rights, plus punitive damages, attorneys' fees, costs and for such further relief as this Honorable Court deems just and proper.

### JURY DEMAND

Plaintiff demands trial by jury on all counts.

HOUSE OF BRIDES, INC.

By: _____
        One of Its Attorneys

James K. Borcia
Ryan Taylor
TRESSLER LLP
233 South Wacker Drive 22nd Floor
Chicago, IL 60606
(312) 627-4000
Firm No. 46239



**D&G** | DAVIS & GILBERT LLP
ATTORNEYS AT LAW

1740 Broadway    T: 212.468.4800    www.dglaw.com
New York, NY 10019    F: 212.468.4888

Direct Dial: 212.468.4918
Personal Fax: 212.974.7048
Email: gkibel@dglaw.com

October 05, 2012

**BY EMAIL AND OVERNIGHT COURIER**

Mr. Dale Buziecki
Buzieki
House of Brides
1184 Roosevelt Rd.
Glenn Ellyn, IL 60137



**Re:    TERMINATION OF DISTRIBUTION RIGHTS**

Dear Mr. Buziecki:

This firm represents Dessy Marketing & Distribution, Inc., A & M Rosenthal Enterprises Inc. and all of its affiliated companies (collectively, "Dessy"). I am writing to you in connection with the unauthorized use of the names, brands, trademarks and images owned by Dessy (the "Dessy Property").

As you know, Alan Dessy has terminated your rights as an authorized distributor of Dessy's products due to numerous failures to pay properly due invoices and your unfulfilled promises time and time again. You no longer have the right to promote or sell Dessy's products or use Dessy's intellectual property, including but not limited to, the Dessy and After Six brands. In addition, since you are unable to fulfill any orders with Dessy, it is deceptive for you to promote products that are unavailable through the House of Brides.

The unauthorized use of the Dessy Property infringes upon Dessy's rights in the Dessy Property in violation of §43 of the Lanham Act (15 U.S.C. §1125). By doing so, you may be liable to Dessy for damages caused by your actions.

Our client is committed to aggressively defending its rights and will not permit these actions to continue. We have been instructed by Dessy to use all necessary legal actions to enforce their rights, including but not limited to filing an action in court seeking, among other things, enjoining any further use of the Dessy Property. Should Dessy be forced to pursue litigation, you may be forced to cover all legal fees incurred by Dessy, in addition to any damages awarded.

We therefore demand that you immediately: (1) cease and desist from using the Dessy Property in any manner, including on websites, emails, fliers, in-store or other materials;

1490192.4



House of Brides
October 05, 2012
Page 2


We therefore demand that you immediately: (1) cease and desist from using the Dessy Property in any manner, including on websites, emails, fliers, in-store or other materials; (2) remove all existing uses of the Dessy Property; (3) cease and desist from using the Dessy Property as keywords or text in any search engine marketing campaigns, as meta tags or otherwise to direct Internet traffic; and (4) cease and desist from making any further use of the Dessy Property or implying that you have any affiliation with, or authorization from, Dessy.

Nothing herein is intended by us, nor should it be construed by you, as a waiver of any rights or remedies which our client may have in this matter, and all such rights and remedies are hereby specifically reserved.

Sincerely,

Gary A. Kibel

cc:    Alan Dessy

1490192.4