UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOUSE OF BRIDES, INC., | ) |
|     Plaintiff/Counterclaim Defendant, | ) ) ) ) |
| v. | ) No. 12 CV 08985 ) ) Judge Sara L. Ellis |
| DESSY MARKETING & DISTRIBUTION, INC., | ) ) ) ) |
|     Defendant/Counterclaimant. | ) |

## OPINION AND ORDER

House of Brides, Inc. ("HOB") and Dessy Marketing & Distribution, Inc. ("Dessy") suffered a breakdown in their long business relationship due to a dispute over the shipment of and payment for wedding attire. HOB brought the current suit against Dessy for breach of contract, breach of the warranty of implied merchantability, defamation, commercial disparagement, fraud, and consumer fraud and deceptive business practices. Dessy counter-claimed for various intellectual property violations related to HOB's continued advertising and sale of Dessy dresses, breach of contract, and account stated.[1] HOB also seeks a declaratory judgment related to Dessy's claims of intellectual property violations. Before the Court is Dessy's motion for summary judgment on all remaining claims and counterclaims. Because the Court finds there are genuine issues of disputed fact on the breach of contract claims, Dessy's motion [51] is denied as to Count I of the Complaint (Breach of Contract) and Counterclaims VII (Breach of Contract) and VIII (Account Stated). Dessy's motion is granted as to HOB's other claims, except Count VII (Declaratory Judgment), which is dismissed as moot.

---

[1] Dessy has since voluntarily dismissed Counts I-VI of its counterclaim [36, 40]. Only the breach of contract and account stated counterclaims remain.

## BACKGROUND[2]

Before the events leading to the filing of this suit, HOB and Dessy did business together for over twenty years. HOB operates retail stores that sell dresses for brides and bridesmaids. Dessy is a manufacturer and distributor of wedding dresses and bridesmaid gowns. HOB was an authorized reseller of certain Dessy products through its retail stores and on-line website. Dessy shipped sample dresses to HOB and HOB displayed photos of certain Dessy products on its website. On or around October 4, 2012, Dessy notified HOB that it was terminating their business relationship due to HOB's creditworthiness.

Over the course of the business relationship, HOB sent purchase orders to Dessy that were accepted by Dessy and Dessy extended credit to HOB to pay on those orders. The parties disagree as to whether Dessy was committed to an exact ship date but agree Dessy's standard shipping window was ten to twelve weeks. The parties also dispute whether HOB was given sixty or ninety days to pay and whether HOB's payment schedule was tied to its seasonal cash flow. The parties have not produced a written contract governing this relationship and agree that no oral contract existed.

In the fall of 2009, Dessy was actively pushing HOB to pay down its aged credit balances by limiting the amount of credit available and threatening to hold dress shipments until HOB complied. HOB and Dessy reached an agreement on a payment schedule, but payment from HOB was erratic. HOB continued to run large sixty- and ninety-day overdue balances, which was a source of concern to Dessy.

---

[2] The facts in this section are derived from the statements of fact submitted by the parties to the extent they comport with Local Rule 56.1. They are taken in the light most favorable to HOB, the non-movant. The Court has considered the parties' objections to the statements of fact and supporting exhibits and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment, unless otherwise noted.

About the same time, HOB began experiencing problems with Dessy's shipment of dresses. HOB claims Dessy shipped duplicate, defective, or wrong dresses, or failed to ship dresses altogether. Dessy states any errors in shipment were corrected or never brought to its attention. Dessy admits refusing to ship orders based on HOB's failure to keep up with its credit obligations.

In 2012, HOB discovered the amount Dessy charged for freight was higher than the actual delivery carrier costs. HOB asked Dessy to reduce the amount it charged for freight. Dessy refused.

By the fall of 2012, HOB and Dessy's dealings were increasingly contentious. Dessy requested HOB bring its credit balance to $150,000 or Dessy would terminate the relationship. In late September 2012, three checks from HOB (totaling around $50,000) bounced and, in early October 2012, Dessy notified HOB by letter that their business relationship was over.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000).

Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

I. **Breach of Contract**

    A. **HOB's Breach of Contract Claim**

Neither party has produced an overarching written contract governing the parties' course of dealing. And the parties agree that there was no oral contract that obligated them to continue to do business with each other. Dessy contends the parties had an at-will, order by order business relationship and has counterclaimed for breach of contract for failure to pay on purchase orders under that theory. HOB articulates essentially the same position, characterizing the individual purchase orders as contracts but asserts the initial purchase order, twenty years ago, "acted as a contract to open [HOB's] account with verbal and implied terms and conditions." Buziecki Aff. ¶ 5. HOB alternatively urges an implied-in-fact contract theory based on the parties' twenty-year relationship.

Under Illinois law, the party seeking to enforce an agreement has the burden of establishing the existence of the agreement. *Serpe v. Williams*, 776 F. Supp. 1285, 1288 (N.D. Ill. 1991). In response to Dessy's position that the business relationship was at-will, HOB does not submit any actual evidence of the contracts and their terms – for example, HOB does not attach even one of the purchase orders – and points to no case law to support its theory. HOB

also does not explain how its implied contract theory could exist in tandem with its express purchase orders theory.

When the basic facts are not in dispute, the existence of a contract is a question of law. *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1102 (7th Cir. 1997). However, the question becomes one of fact and summary judgment may be precluded when the parties dispute key terms of the alleged agreement. *See Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 618 (7th Cir. 2008). The current record does not direct only one conclusion as to Dessy and HOB's meeting of the minds under either an express or implied contract theory. Key terms of the alleged agreement – delivery and payment – cannot be gleaned from the record. HOB claims delivery on its orders was specified for a date certain, while Dessy asserts a window of standard or rush delivery. Similarly, although the parties agree the purchase orders themselves stated a thirty-day payment schedule, HOB contends an agreement with Dessy allowed HOB sixty to ninety-days to pay, and the evidence submitted shows HOB fairly consistently ran an over-ninety day balance. Because the essential terms of delivery and payment are disputed, summary judgment for Dessy as to HOB's breach of contract claim (Count I) is denied.

### B. Dessy's Counterclaims for Breach of Contract and Account Stated

Dessy seeks summary judgment on its breach of contract and account stated counterclaims. As discussed above, the exact terms of the alleged contract between the parties cannot be determined on summary judgment and therefore disposition on Dessy's breach of contract claim is premature.

"An account stated is an agreement between parties who previously engaged in monetary transactions that the account representing those transactions is true and the balance stated is correct." *Ercor Corp. v. N. Bldg. Co.*, No. 09 C 3320, 2010 WL 1729482, at *4 (N.D. Ill. Apr.

27, 2010). Dessy may establish an account stated "by rendering a statement of account to a party who retains the statement beyond a reasonable time without objection." *Id.* Dessy does not submit sufficient evidence for the Court to determine as a matter of law that the "aged accounts" document attached to its motion for summary judgment was ever presented to and, most importantly, agreed on by HOB.[3] Therefore, summary judgment on Dessy's counterclaims (Counterclaims VII and VIII) is denied.

## II. Breach of Implied Warranty of Merchantability

In Illinois, a product breaches the implied warranty of merchantability "if it is not fit for the ordinary purposes for which such goods are used." *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E.2d 334, 340, 372 Ill. App. 3d 354, 310 Ill. Dec. 10 (1st Dist. 2007) (internal quotation marks omitted). Dessy argues that HOB has no evidence that some Dessy products were not merchantable. In its response, HOB does not point to any specific facts that would support its claim of defective goods. HOB has not met its burden in response to this motion. *See Celotex Corp.*, 477 U.S. at 322 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Summary judgment for Dessy is granted as to Count II (Implied Warranty of Merchantabilty).

## III. Defamation and Commercial Disparagement

A defamation claim requires proof of a false statement, published to a third party, that damaged the plaintiff. *Seitz-Partridge v. Loyola Univ. of Chicago*, 987 N.E.2d 34, 41, 2013 IL App (1st), 113409, 369 Ill. Dec. 692 (2013). "Truth is an absolute defense to defamation" and

---

[3] Dessy's citations to a statement of account attached to its Answer suffer from this same deficiency. In addition, Dessy makes no attempt to provide a foundation for that document or establish this Court's ability to consider it on summary judgment.

"[o]nly 'substantial truth' is required for this defense." *Id.* While the question of truth is normally one for the jury, "where no reasonable jury could find that substantial truth had not been established, the question is one of law." *Id.*

Dessy admits that it informed customers that HOB's account had been terminated for reasons of credit. HOB fails to muster any facts to seriously challenge Dessy's assertion that this statement was true. Dessy submitted emails spanning several years documenting HOB's pattern of credit overages, including emails containing Dessy's final threats to close the account based on the failure to pay. HOB points to no facts to dispute that Dessy terminated the business relationship in October 2012 for the credit reasons stated.

The viability of commercial disparagement as a cause of action under Illinois law is an unsettled question. *Barry Harlem Corp. v. Kraff*, 652 N.E.2d 1077, 1083, 273 Ill. App. 3d 388, 210 Ill. Dec. 101 (1995) (citing *Appraisers Coal. v. Appraisal Inst.*, 845 F. Supp. 592, 610 (N.D. Ill. 1994)). But this Court need not make any determination on that point of law because, even assuming a valid cause of action, HOB has not provided any evidence of false or demeaning statements by Dessy regarding the quality of HOB's goods and services, as required by this tort. *See id*. HOB states Dessy told customers that HOB was going out of business and Dessy admits telling customers HOB was terminated because it did not pay its bills. These statements do not concern the quality of HOB's services (or of Dessy's or other goods sold by HOB). Summary judgment is granted on Counts III and IV (Defamation and Commercial Disparagement) for Dessy.

**IV.  Fraud**

Under Illinois law, in order to establish fraud, HOB must prove (1) Dessy made a fraudulent statement; (2) of material fact; (3) that Dessy knew or believed to be false; (4) with

the intent to induce HOB to act; (5) HOB justifiably relied on that statement; and (6) suffered damage as a result. *See Houben v. Telular Corp.*, 231 F.3d 1066, 1074 (7th Cir. 2000). HOB must show, by clear and convincing evidence, that at the time the allegedly fraudulent statement was made, it was an intentional misrepresentation. *See Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 852–53 (7th Cir. 2007).

HOB's theory of fraud is that Dessy claimed a freight charge that was more than the delivery service charge that it incurred to ship goods to HOB. HOB argues Dessy had a duty to limit its shipping charges to the amount it paid the delivery service company. HOB does not make any showing that Dessy intended HOB think that the freight charge was only the delivery service charge. When confronted, Dessy admitted it included handling in the "freight" charge and refused to change its practice – a practice that, from the record submitted, appears to have been widespread among the companies with whom HOB did business. HOB has not articulated the alleged origin or parameters of Dessy's supposed duty to charge one price versus another. HOB has failed to respond to Dessy's motion with clear and convincing evidence of intent to defraud. Summary judgment is granted on Count V (Fraud) for Dessy.

**V.     The Consumer Fraud and Deceptive Business Practices Act Claim**

"The Consumer Fraud Act is intended primarily to provide consumers with broader protections against unfair or deceptive acts." *Greenpoint Mortg. Funding, Inc. v. Family First Mortg. Inc.*, No. 05 C 4498, 2007 WL 2608554, at *4 (N.D. Ill. Sept. 4, 2007). HOB argues that it is a consumer for the purposes of the Consumer Fraud Act ("Act") and the freight charges listed on Dessy's invoices constitute deceptive practices.

HOB does not explain how it qualifies as a consumer under the Act when the Act defines a consumer as "any person who purchases or contracts for the purchase of merchandise not for

8

resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. 505/1(e). Courts have allowed non-consumer businesses to pursue claims under the Act in certain limited circumstances, but to do so, the business must establish the alleged conduct meets the consumer nexus, i.e. that it involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns. *See Greenpoint Mortg.,* 2007 WL 2608554, at *4 (citing *Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217, 221, 336 Ill. App. 3d 319, 270 Ill. Dec. 642 (2003)). This "consumer nexus" requirement ensures that the Act achieves its main goal of consumer protection because, as other courts have noted, the Act "does not govern every individual breach of contract claim and does not furnish an additional and redundant remedy to all common-law breach of contract and fraud claims." *Id.* (internal quotation marks omitted). HOB states, but does not explain, how the freight up-charge was a trade practice addressed to the market generally and therefore the Court cannot assess this argument. As to otherwise implicating consumer protection concerns, courts generally require "some allegations of sharp practices designed to mislead consumers about a competitor, or an implication of public health, safety or welfare issues." *Id.* at *5. HOB complains about having to pay the additional freight charges but points to no facts to suggest the freight charges could possibly qualify as this kind of consumer or competitor-directed sharp practice. Summary judgment is granted on Count VI (Consumer Fraud and Deceptive Business Practices) for Dessy.

## VI. Declaratory Judgment Claim

HOB has indicated that its declaratory judgment claim is moot in light of Dessy's voluntary dismissal of its intellectual property counterclaims. Therefore, Count VII (Declaratory Judgment) is dismissed.

9

## CONCLUSION

For the foregoing reasons, Dessy's motion for summary judgment [51] is granted in part and denied in part. Summary judgment is granted for Dessy on Counts II-VI (Breach of Implied Warranty of Merchantability, Defamation, Commercial Disparagement, Fraud, Consumer Fraud and Deceptive Business Practices). Summary judgment is denied on Count I (Breach of Contract) and Counterclaim Counts VII (Breach of Contract) and VIII (Account Stated). Count VII (Declaratory Judgment) is dismissed as moot.

Dated: June 24, 2014

SARA L. ELLIS
United States District Judge